IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 11-247 |
| | ) | |
| JAMES ANDREW WILLIAMS | ) | |

## OPINION

DIAMOND, D.J.

On October 27, 2011, defendant James Andrew Williams was charged in a one-count indictment with failing to register as a convicted sex offender between on or about December 1, 2009, and on or about March 2, 2010, in violation of 18 U.S.C. §2250(a), which is the criminal penalty provision of the Sex Offender Registration and Notification Act ("SORNA"). Defendant has filed a Motion to Dismiss the Indictment (Document No. 35), asserting numerous constitutional bases for dismissal. The government has filed a Response In Opposition to defendant's motion (Document No. 39) (the "government's Response"), to which defendant has replied (Document No. 46 ). For the reasons set forth herein, defendant's motion to dismiss will be denied.

I. **Background**

As stated, defendant was indicted for allegedly failing to register as a convicted sex offender, in violation of 18 U.S.C. §2250(a). The requirement to register was based on a 1995 conviction in Licking County, Ohio of the felony sex offense of Compelling Prostitution Under 18, in violation of Ohio law, for which he was sentenced to three to ten years imprisonment. See

government's Response, Ex. C. On May 20, 2005, defendant registered as a sex offender in Ohio with the Hancock County Sheriff's Office. Id., Ex. B.

Defendant subsequently was twice convicted of failing to register as a sex offender: first, on July 6, 2007, in Warren County, Mississippi, for which he was sentenced to one year imprisonment; and then again on April 24, 2008, in Hancock County, Ohio, for which he was sentenced to eleven months imprisonment. See government's Response, Exs. A, F. When defendant was released from prison on February 24, 2009, he executed a registration notice in Ohio. Id., Ex. G.

One month later, defendant moved to Pennsylvania, and registered as a convicted sex offender with the Pennsylvania State Police Megan's Law Unit on March 10, 2009, listing an address in Edinburg, Pennsylvania. See government's Response, Exs. H, I. By signing the Pennsylvania registration form, defendant acknowledged various requirements including, inter alia, that he must register with the appropriate law enforcement agency of another state within 48 hours of moving outside of Pennsylvania, and that he was required to notify the Pennsylvania State Police within that same time frame of his change of residence. Id., Ex. I.

Despite his acknowledgment of the Pennsylvania registration requirements, defendant moved to Arizona in May 2009, but failed to register as a sex offender in that state. See government's Response, Exs. H, J, K. In July 2009, defendant moved from Arizona to North Carolina, but he failed to register in North Carolina as well. Id., Exs. H, L. As of November 25, 2009, defendant was employed in Hot Springs, South Dakota, but likewise failed to register with the authorities in that state. Id., Exs. M, N. Defendant never updated his Pennsylvania sex offender registration at any time after departing the Edinburg, Pennsylvania address that he had

AO 72
(Rev. 8/82)

provided on his Pennsylvania registration form. Id., Ex. O.

Following defendant's indictment in this District for failing to register as a convicted sex offender, United States Marshals arrested him in New York on October 31, 2011. See government's Response, Ex. Q. After his arrest, defendant executed a waiver of rights form and wrote a time line of his travels after he left Pennsylvania. Id., Exs. H, Q, R. According to the Report of Investigation, defendant admitted that he knew he was required to register as a sex offender in every state where he resided or worked, including New York, but he never did so. Id., Exs. Q, S.

## II.   SORNA Framework

In 2006, Congress passed SORNA, which created a national sex offender registry with the goal of eliminating inconsistencies among state laws and standardizing registration across the states. See United States v. Shenandoah, 595 F.3d 151, 154 (3d Cir. 2010), *abrogated in part by* Reynolds v. United States, 132 S.Ct. 975 (2012).[1] SORNA requires each jurisdiction to maintain a sex offender registry, which includes certain identifying information about the sex offender,[2] such as his residence, place of employment and/or school, physical description, criminal history,

---

[1]The Third Circuit held in part in Shenandoah that SORNA's requirement that a sex offender keep his registration current applied to an offender who already was a registered sex offender when SORNA was enacted, despite the fact that the states had not yet implemented SORNA. Shenandoah, 595 F.3d at 157-58. Only that particular holding of Shenandoah was abrogated by the Supreme Court's ruling in Reynolds that SORNA's registration requirements did not apply to pre-Act offenders until such time as the Attorney General so specified. Reynolds, 132 S.Ct. at 980, 984. Otherwise, Shenandoah's rulings on various other issues concerning the constitutionality of SORNA remain the law of the Third Circuit as explained in herein.

[2]Under SORNA, a "sex offender" is defined as "an individual who was convicted of a sex offense," which is "a criminal offense . . . involving a sexual act or sexual conduct with another." 42 U.S.C. §§16911(1), 16911(5)(A).

3

including the offense for which the sex offender is registered, fingerprints, photograph, DNA sample and a copy of a valid identification card. See 42 U.S.C. §§16912, 16914.

In addition, SORNA sets forth requirements for a sex offender's initial registration and for keeping the registration current in each jurisdiction where he resides, works or is a student. See 42 U.S.C. §16913(a)-(c). With regard to pre-SORNA sex offenders, the Attorney General was given "the authority to specify the applicability of the requirements of [SORNA] to sex offenders convicted before [its] enactment . . . or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders. . . . Id., §16913(d). In response to that directive, the Attorney General initially announced an interim rule which became effective on February 28, 2007. See 72 Fed. Reg. 8894 (Feb. 28, 2007). Pursuant to the interim rule, the Attorney General declared that SORNA's requirements applied "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 C.F.R. §72.3. Subsequently, on July 2, 2008, the Attorney General issued final regulations on the implementation of SORNA, which were in line with the interim rule. See 73 Fed. Reg. 38030 (July 2, 2008); 28 C.F.R. §72.3.

SORNA's criminal penalty provision, which is set forth in 18 U.S.C. §2250(a), makes it a federal offense for a convicted sex offender to travel in interstate commerce without registering in his new state or updating his registration in his old state. A violation of 18 U.S.C. §2250(a) is established when an offender who is (1) required to register in some jurisdiction; (2) knowingly fails to register or update a prior registration; and (3) travels in interstate commerce.[3] See 18

---

[3] It is also a violation of §2250(a) for one who is convicted of a sex offense under federal law to fail to register if required to do so under SORNA. In that scenario, no interstate travel is required.

4

U.S.C. §2250(a); Shenandoah, 595 F.3d at 158.

**III.     Defendant's Motion to Dismiss Indictment (Document No. 35)**

Defendant has moved to dismiss the indictment against him on the following five grounds: (1) Congress violated the non-delegation doctrine by delegating to the Attorney General the authority to determine the applicability of SORNA to offenders, like defendant, who were convicted of their sex offenses before its enactment; (2) application of SORNA to defendant violates the Ex Post Facto Clause of the Constitution; (3) defendant was not given notice of SORNA's requirements, thus he did not knowingly fail to register; (4) defendant's due process rights were violated because he was not given proper notice of his obligation to register; and (5) SORNA's criminal penalty provision violates the Commerce Clause. For reasons explained below, each of defendant's arguments is without merit, and his motion to dismiss the indictment will be denied.

**A.     Non-delegation doctrine**

Defendant argues that Congress violated the non-delegation doctrine by delegating to the Attorney General the authority to specify whether SORNA's requirements apply to sex offenders who were convicted of their underlying sex offenses before SORNA was enacted and implemented. See 42 U.S.C. §16913(d). Thus, according to defendant, §16913(d) is unconstitutional as applied to him because it violates the non-delegation doctrine.

The non-delegation doctrine is based on the principle of preserving the separation of powers between the three branches of government. See Mistretta v. United States, 488 U.S. 361, 371 (1989). It arises from Article I, Section I of the Constitution, which states that "[a]ll legislative

5

powers herein granted shall be vested in a Congress of the United States." U.S. Const., art. I, §1. The non-delegation doctrine prohibits Congress from "abdicat[ing] or . . . transfer[ring] to others the essential legislative functions with which it is [constitutionally] vested." Panama Refining Co. v. Ryan, 293 U.S. 388, 421 (1935).

The Supreme Court has held, however, that the non-delegation doctrine does not prevent Congress from obtaining the assistance of the other branches of government. See Mistretta, 488 U.S. at 372. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" Id., (quoting J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409 (1928)). Under the "intelligible principle" test, a delegation of legislative power to another branch of government is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." Mistretta, 488 U.S. at 372-73 (quoting American Power & Light Co. v. SEC, 329 U.S. 90, 105 (1946)).

The United States Court of Appeals for the Third Circuit has not yet ruled whether the discretion granted to the Attorney General under 42 U.S.C. §16913(d) to specify the applicability of SORNA's requirements to offenders who were convicted of their underlying sex offenses before its enactment violates the non-delegation doctrine. Although the decisions of other circuit courts are not binding on this court, we note that all of the circuit courts that have considered this issue have rejected non-delegation attacks on SORNA. See United States v. Felts, 674 F.3d 599, 606 (6th Cir. 2012); United States v. Burns, 418 Fed. Appx. 209, 211-12 (4th Cir. 2011); United States v. Guzman, 591 F.3d 83, 93 (2d Cir. 2010); United States v. Whaley, 577 F.3d 254, 264 (5th Cir.

AO 72
(Rev. 8/82)

2009); United States v. Ambert, 561 F.3d 1202, 1213-14 (11th Cir. 2009). We also note that another court in this District has held that §16913(d) does not violate the non-delegation doctrine. See United States v. Honaker, 2012 WL 2952367 (W.D.Pa. July 19, 2012) (Cohill, J.) (denying motion to dismiss indictment alleging violation of 18 U.S.C. §2250(a) for failing to register as a sex offender).

We find persuasive the decisions of these courts, and likewise conclude that Congress provided an intelligible principle to the Attorney General in delegating authority to determine the applicability of SORNA to sex offenders convicted before its enactment. As to the first factor outlined in Mistretta, Congress clearly provided the Attorney General with the general policy to guide his exercise of discretion under 42 U.S.C. §16913(d). Section 16901 expressly states that a comprehensive national registration system was being instituted "[i]n order to protect the public from sex offenders and offenders against children." 42 U.S.C. §16901. Accordingly, "[b]y setting forth the broad policy goal of protecting the public and seeking a 'comprehensive' national registry, Congress has suggested that the Attorney General should require pre-2006 sexual offenders to register to the extent that he determines it would contribute to the protection of the public and the comprehensiveness of a national sex offender registry." Ambert, 561 F.3d at 1214.

Regarding the second Mistretta factor, it is clear that the Department of Justice, through the Attorney General, is the agency designated to apply the policy. Section 16913(d) states that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders . . . ." 42 U.S.C. §16913(d).

7

As to the final Mistretta factor, the boundaries of the authority delegated to the Attorney General are clear. In this regard, we note that Congress "made a series of legislative judgments . . . that constrict the Attorney General's discretion to a narrow and defined category." Ambert, 561 F.3d at 1213. Congress defined the crimes which require registration (42 U.S.C. §16911), where the offender must register (§16913(a)), the time period for and method of registration (§16913(b), (c)), the type of information that registrants must provide (§16914(a)), and the elements and penalties for the federal crime of failure to register (18 U.S.C. §2250(a)). See Guzman, 591 F.3d at 93; Ambert, 561 F.3d at 1214. The Attorney General's discretion was limited only to determining whether SORNA's requirements apply to the limited class of individuals who were convicted of covered sex offenses prior to its enactment. See 42 U.S.C. §16913(d). In sum, "Congress did not give the Attorney General unbridled discretion to impose different registration requirements or to create a new criminal offense to be applied to pre-enactment sex offenders." Burns, 418 Fed. Appx. at 212. Therefore, we conclude that Congress provided an intelligible principle to guide the Attorney General in exercising his delegated authority, thus §16913(d) does not violate the non-delegation doctrine.[4]

B. **Ex Post Facto Clause**

The Constitution provides that neither Congress nor any state shall pass any "ex post facto Law." See U.S. Const., art. I, §9, cl. 3; art. I, §10, cl. 1. Defendant argues that retroactive application of SORNA to pre-enactment offenders, like him, violates the Ex Post Facto Clause

---

[4] As noted by the Third Circuit in United States v. Amirnazmi, 645 F.3d 564, 574-75 (3d Cir. 2011), the Supreme Court has invoked the non-delegation doctrine to strike down a law only twice in its history. See A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935) (striking down § 3 of the National Industrial Recovery Act of June 16, 1933); Panama Refining Co. v. Ryan., 293 U.S. 388 (1935) (striking down § 9(c) of the same Act).

8

because it increases his punishment for his original sex offense that he committed over fifteen years ago. The United States Court of Appeals for the Third Circuit has previously rejected this argument in Shenandoah, in which the court determined that neither SORNA nor the defendant's conduct implicated the Ex Post Facto Clause because neither contemplated retroactive events. Shenandoah, 595 F.3d at 158. Although defendant submits that the Third Circuit erroneously concluded that SORNA does not violate the Ex Post Facto Clause, he candidly admits that Shenandoah is the law of this Circuit on the issue, and makes the objection to preserve it for possible Supreme Court review.

The Ex Post Facto Clause prohibits any law that "changes the punishment, and inflicts a greater punishment" for pre-existing conduct. Miller v. Florida, 482 U.S. 423, 429 (1987) (citation omitted). SORNA does not violate the Ex Post Facto Clause because it does not increase punishment for a defendant's original sex offense. Rather "SORNA's focus is prospective. It creates a new punishment for a new offense, this new offense being traveling in interstate commerce and failing to register as a sex offender under SORNA." Shenandoah, 595 F.3d at 158. Accordingly, there is no Ex Post Facto violation in this case.

### C. Notice and Due Process Clause

To establish that a defendant violated the failure to register statute, the government must establish, inter alia, that he knowingly failed to register or update a registration as required by SORNA. See 18 U.S.C. §2250(a)(3). Defendant contends that he did not "knowingly" fail to register under SORNA because the government did not notify him of his obligation to do so, thus the indictment alleging that he violated §2250(a) should be dismissed. Defendant also makes the related argument that absent proper notice of his obligation to register, prosecuting him under

9

§2250(a) violates his Fifth Amendment right to due process of law.

Defendant's notice and due process arguments are foreclosed by the Third Circuit's decision in Shenandoah, wherein the court held that SORNA's criminal provision is not a specific intent law, and receipt of notice by a sex offender under 42 U.S.C. §16917[5] of his duty register is not an element of the federal offense of failing to register. See Shenandoah, 595 F.3d at 159 (citing with approval United States v. Gould, 568 F.3d 459, 468 (4th Cir. 2009), for the proposition that "[t]here is no language requiring specific intent or a willful failure to register such that [the sex offender] must know his failure to register violated federal law.")). In Shenandoah, it was undisputed that the defendant knew he was required to register under New York law, which mandated that he update his registration if he traveled or moved to another state and that he also register in the new state. Under those facts, the Third Circuit found "no reason to hold that SORNA's notice provision was intended to dilute the effect of state notice requirements" and determined that Shenandoah had notice of his registration obligation under SORNA based on information he received on the New York registration forms, even if the notice did not explain that failing to register would be a violation of both federal and state law. Shenandoah, 595 F.3d at 160. As a result, the Shenandoah court held that the defendant had adequate notice of his duty to register under SORNA and concluded that his due process rights, based on lack of notice, were not violated. Id.

Defendant has acknowledged that Shenandoah's holding forecloses his due process argument, but raises the issue to preserve it for possible Supreme Court review. In addition, while

---

[5] Section 16917(a) requires that offenders being discharged from prison be advised of their duty to register. See 42 U.S.C. §16917(a). Pursuant to §16917(b), the Attorney General was authorized to prescribe rules for the notification of offenders with pre-SORNA convictions.

10

defendant concedes that the Third Circuit in Shenandoah determined that the defendant had received adequate notice, he implores this court to distinguish Shenandoah on a factual basis.

There is no basis to distinguish Shenandoah because like the defendant in that case, defendant's notice of state registration requirements afforded him adequate notice of his duty to register under SORNA. Following his initial registration as a sex offender in Ohio in May 2005, defendant subsequently was convicted of failing to register as a sex offender in Mississippi on July 6, 2007, and again in Ohio on April 24, 2008. After being released from imprisonment following the second conviction, defendant executed a registration notice in Ohio on February 24, 2009, which advised him that he was required to register in each county in Ohio or any other state where he resides, attends school or is employed. See government's Response, Ex. G. The registration notice further advised defendant that failure to register in Ohio or any other state would result in criminal prosecution. Id. By signing the form, defendant acknowledged that the registration requirements had been explained to him. Id. Defendant signed a similar registration notice when he moved to Pennsylvania one month later, again acknowledging the applicable registration requirements, including the requirement to register in another state within 48 hours of moving outside of Pennsylvania, as well as his understanding that he would be committing a felony offense if he failed to fulfill any applicable requirement. Id., Ex. I.

Despite having been notified more than once of his duty to register and acknowledging that he understood the registration requirements, defendant subsequently left Pennsylvania and lived and/or worked in Arizona, North Carolina, South Dakota and New York, but failed to register as a sex offender in any of those states, or to update his address in Pennsylvania. As the Third Circuit held in Shenandoah, defendant had adequate notice of his registration obligations for SORNA

AO 72
(Rev. 8/82)

purposes based on the information provided to him in the Ohio and Pennsylvania forms.

### D. Commerce Clause

Defendant's final argument is that Congress exceeded its authority under the Commerce Clause in enacting the failure to register statute, 18 U.S.C. §2250(a). Despite this argument, defendant acknowledges the Third Circuit's holding in Shenandoah that SORNA is a proper regulation under Congress' commerce power. Shenandoah, 595 F.3d at 160. Thus, defendant's argument is made solely to preserve it for possible Supreme Court review.

The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., art. I, § 8, cl. 3. In United States v. Lopez, 514 U.S. 549 (1995), the Supreme Court identified three categories of activity that Congress may regulate under its commerce power: (1) "Congress may regulate the use of the channels of interstate commerce;" (2) "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." Id. at 558-59.

In Shenandoah, the Third Circuit observed that SORNA's criminal penalty provision requires the government to prove that a defendant traveled in interstate or foreign commerce and thereafter failed to register. See 18 U.S.C. §2250(a)(2)(B). The Third Circuit therefore held that SORNA derives its authority from each prong of Lopez, but most specifically the ability to regulate "persons or things in interstate commerce" and "the use of the channels of interstate commerce." Shenandoah, 595 F.3d at 161. Accordingly, SORNA does not violate the Commerce Clause, and

AO 72
(Rev. 8/82)

defendant's argument to the contrary is without merit.

### III. Conclusion

For all of the foregoing reasons, each of defendant's constitutional attacks on SORNA lacks merit, and his motion to dismiss the indictment in this case will be denied.

An appropriate order will follow.

*Gustave Diamond*
Gustave Diamond
United States District Judge

Date: October 22, 2012

cc: Jessica Lieber Smolar
Assistant U.S. Attorney

W. Penn Hackney
Assistant Federal Public Defender

AO 72
(Rev. 8/82)